## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

### CIVIL ACTION NO. 1:06-CV-164

**DARIA T. JOHNSON**                                                          **PLAINTIFF**

**V.**

**PIONEER CREDIT COMPANY**                                   **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion for summary judgment by Defendant, Pioneer Credit Company. (DN 15). Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's motion is **DENIED**.

### I. FACTS

The Plaintiff, Daria T. Johnson ("Johnson"), worked for the Defendant, Pioneer Credit Company ("Pioneer"), for approximately 14 years before she was terminated on August 16, 2006. The Plaintiff believes that she was terminated for encouraging her co-worker, Beth Eddington, to file an "EEOC" claim against Pioneer for gender discrimination.

Shortly before her termination, Larry Brewer, Pioneer's Kentucky supervisor, was visiting the Bowling Green, Kentucky, office where Johnson and Eddington both worked. On that visit, he told another employee, Jason Evans, that Jason needed to learn the job responsibilities of other employees in the office because he wanted Jason to become a "traveling manager." A traveling manager covered various offices while the regular office managers took their vacations. Eddington testified as follows:

> Mr. Brewer was down for a visit. He did a supervision. After he was done, the day that he was going home, he made an announcement in the office that Jason was going to be the traveling manager. Being the cut-up that I am, I asked, you know, what made him so special. And Larry said he didn't figure that I would be interested in

the position because I had a child at home.

(DN 15, Attach. Eddington Dep., p. 47-48). A few days later, Johnson told Eddington that she was being discriminated against by Pioneer because she was a single mom. She told Eddington that she should file an EEO complaint. Eddington did not believe that she was being discriminated against, but she told Dean Cecil, the office manager, what Johnson had told her. Cecil encouraged Eddington to record what Johnson had told her in a written statement. This statement was faxed to Mr. Brewer's office. According to Johnson, she was terminated no more than 48 hours after Eddington submitted this statement.

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing

there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.

### III. ANALYSIS

Johnson claims that she was terminated in retaliation for encouraging a co-worker to file an EEO complaint and that this retaliatory termination was in violation of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and the Kentucky Civil Rights Act, K.R.S. §344.010, et seq. The Defendant contends that it is entitled judgment as a matter of law.

The Kentucky Civil Rights Act make it unlawful for an employer "to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's ...sex..." K.R.S. §344.040. It also makes it unlawful for any person "to retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter..." K.R.S. §344.280(1). The Civil Rights Act of 1964 contains virtually identical language, 42 U.S.C. §2000e-3(a), and retaliation claims brought under either statute are analyzed in the same way. Curtis v. Hanger Prosthetics & Orthotics, Inc., 101 Fed. Appx. 61, 64 (6th Cir. 2004) (citing Mountain Clay Inc, Inc. v. Commonwealth, 830 S.W. 2d 395, 396 (Ky. App. 1992)).

The Sixth Circuit has held that 42 U.S.C. §2000e-3(a) prohibits an employer from retaliating against an employee who has "opposed" any practice by the employer made unlawful under Title VII. Johnson v. University of Cincinnati, 215 F.3d 561, 578 (6th Cir. 2000)(citing Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1034, 1312 (6th Cir. 1989). To establish a claim under §2000e-3(a), the plaintiff must show that:

1) she engaged in an activity protected by Title VII;

      2) this exercise of protected rights was known to the defendants;

      3) defendants thereafter took an adverse employment action against the plaintiff; and

      4) there was a causal connection between the protected activity and the adverse employment action.

Id. (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. Id. If the defendant meets this burden, the plaintiff must then demonstrate that this proffered reason was not the true reason - but a mere pretext- for the adverse employment action. Id.[1]

      The Defendant first seems to argue that the Plaintiff was not engaged in a protected activity when she encouraged Eddington to file an EEO complaint because Eddington did not believe she had been discriminated against. The Defendant contends that there "is nothing in the Kentucky Civil Rights Act which protects an employee from being discharged for telling another employee to sue the employer because of what she perceives to be discrimination." (DN 15, Defendant's Memorandum, p. 10). However, the Sixth Circuit has recognized that "opposing" unlawful conduct, which is a protected activity under §2000e-3(a), includes activities such as complaining to co-workers about alleged discrimination against oneself or others. Id. at 580 (citing the EEOC Compliance Manual, (CCH) P 8006)). The Sixth Circuit has also adopted the EEOC's rule that opposition to allegedly unlawful conduct is protected even if the challenged practice is ultimately found not to be unlawful, as long as the opposition is based upon a "reasonable and good faith belief

---

[1] To the extent that the Defendant has relied upon Barnes v. McDowell, 848 F.2d 725 (6th Cir. 1988), to support its motion for summary judgment, the Court holds that it is inapposite since that case involved a 42 U.S.C. § 1983 claim where the plaintiff alleged that his state employer had retaliated against him for engaging in protected speech.

4

that the opposed practices were unlawful." Id.

The Court holds that when the Plaintiff encouraged Eddington to file an EEO complaint, she was engaged in a protected activity because she was "opposing" a practice made unlawful by Title VII. Further, viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that a reasonable jury could find that the Plaintiff had a reasonable and good faith belief that the practice she opposed - the Defendant's alleged failure to promote an individual because of her sex - was unlawful under Title VII.

The Plaintiff has also produced evidence which shows that the Defendant knew of her engagement in a protected activity. Eddington reported the Defendant's conduct to her supervisor and documented the Defendant's statements to her in a written statement for her supervisor. Furthermore, the Plaintiff has shown that she subsequently suffered an adverse employment action (termination).

To show causation, the fourth element necessary to establish a prima facie case of retaliation, the plaintiff must "proffer evidence sufficient to raise the inference that [his or her] protected activity was the likely reason for the adverse action." EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997). And, "while it is true that temporal proximity alone is usually insufficient to establish a causal connection for a retaliation claim," Little v. BP Exploration & Oil Co., 265 F.3d 357, 363-364 (6th Cir. 2001), the causal connection element is satisfied "where the adverse employment action occurred within a matter of months, or less, of the protected activity." Dixon v. Gonzalez, 481 F.3d 324, 334 (6th Cir. 2007). Thus, here, where the evidence shows that the Plaintiff was terminated no more than a few days after the Defendant learned that she had encouraged Eddington file an EEO complaint, the Court holds that the causal connection element is satisfied. Accordingly, the

Court holds that the Plaintiff has established a prima facie case of retaliation.

Because the Plaintiff has established a prima facie case of retaliation, the burden falls on the Defendant to produce some legitimate, nondiscriminatory reason for the adverse employment action. While the defendant "need not persuade the court that it was actually motivated by the proffered reasons," it must raise "a genuine issue of fact as to whether it discriminated against the plaintiff." Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 666 (6th Cir. 2000)(citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-255 (1981)). Here, the Defendant asserts that the Plaintiff was terminated for "creating a hostile work environment; for unsatisfactory job performance; and for a poor attitude." (DN 15, Defendant's Memorandum in Support of Summary Judgment, p. 2). Indeed, when asked why the Plaintiff was terminated, Mr. Brewer replied, "The attitude. Creating the hostile environment. I received many, many, many complaints from the fellow employees about attitude, not wanting to work with them, not wanting to adjust. Just a total lack of performance." (DN 15, Attach. 12, Brewer Dep., p. 20).[2] Further, the Plaintiff's personnel file indicates that she was reprimanded on different occasions for "stirring up trouble in the branch with comments about the supervisor, manager, and company" and for referring customers to a competitor. (DN 15, Attach. 15, Defendant's Exhibits). Thus, the Court concludes that the Defendant has met its burden because it has "explained what [it] has done [and] produced some evidence of legitimate nondiscriminatory reasons." Cline, 206 F.3d at 666.

Thus, the burden shifts to the plaintiff to demonstrate that the proffered reason was a "mere pretext" for discrimination. Johnson, 215 F.3d at 578. The plaintiff may establish pretext by establishing that the proffered reason 1) has no basis in fact; 2) did not actually motivate the adverse

---

[2] It was not Mr. Brewer who fired the Plaintiff, but Mr. Brewer's superior, the vice-president of Pioneer, Mr. Ricky Hentz. (DN 15, Attach. 13, Brewer Dep., p. 21). Mr. Hentz was apparently not deposed.

action; or 3) was insufficient to motivate the adverse action. <u>Abbott v. Crown Motor Co.</u>, 348 F.3d 537, 542 (6th Cir. 2003). Here, the Plaintiff has presented evidence to suggest that the Defendant's proffered reason has no basis in fact. The Plaintiff's former supervisor testified that the Plaintiff was "a good employee" who was "so damn good at her job, she made it look easy." He also referred to her as a "team player." (DN 17, Attach. 2, Pedigo Depo., p. 27).

Thus, because the Plaintiff has established a prima facie case of retaliation, and because the true reasons for discharging the Plaintiff present a question of fact, the Court holds that summary judgment is inappropriate. See, e.g., <u>Singfield v. Akron Metro. Hous. Auth.</u>, 389 F.3d 555, 564-565 (6th Cir. 2004).

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is **DENIED**. **IT IS SO ORDERED.**

cc: Counsel of Record